**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

**SAFECO INSURANCE COMPANY**                                                  **PLAINTIFF**
**OF AMERICA**

**V.**                              **CASE NO. 5:21-CV-05034**

**DILLON DOOMS;**
**TABATHA TAYLOR;**
**HALEY RHODES;**
**and ADRIANA PINEDA**                                                    **DEFENDANTS**

<u>**BENCH TRIAL OPINION AND ORDER**</u>

This action came before the Court for a one-day bench trial on April 25, 2022. Plaintiff Safeco Insurance Company of America seeks a declaratory judgment that it has no duty to defend or indemnify Defendant Dillion Dooms in two underlying lawsuits in Arkansas state court.[1] In those underlying lawsuits, Defendants Tabatha Taylor, Haley Rhodes, and Adriana Pineda (collectively, "the State-Court Plaintiffs") have sued Mr. Dooms for intentional torts and negligence related to Mr. Dooms video recording the State-Court Plaintiffs while nude.[2]

Safeco sought summary judgment in its favor, and the Court issued a memorandum opinion and order (Doc. 91) denying that motion. The Court found there remained a genuine dispute of material fact for trial: Whether Mr. Dooms's failure to warn the State-Court Plaintiffs that cameras were recording in his studio was intentional or merely negligent.

---

[1] Safeco is currently defending Mr. Dooms in both underlying lawsuits under a reservation of rights.

[2] While Mr. Dooms and the State-Court Plaintiffs are adversaries in the underlying lawsuits, their interests are aligned in this declaratory judgment action, and the Court will collectively refer to them as "Defendants."

In advance of trial, the parties submitted Stipulated Facts and Agreed Basis of Applicable Law (Doc. 93) and trial briefs (Docs. 94, 95, 96, 98, 100, 101, 102). The Court also directed the parties to submit post-trial briefs (Docs. 105, 106, 107). At trial, the parties stipulated to the admission of eight exhibits: Mr. Dooms's 2018–19 and 2019–20 Safeco Insurance Policies ("the Policy") (Joint Exs. 1 & 2);[3] the State-Court Plaintiffs' underlying complaints (Joint Exs. 3, 4, 5); Mr. Dooms's deposition transcript (Joint Ex. 6);[4] Mr. Dooms's criminal file (Joint Ex. 7); and an exemplar of the type of camera used by Mr. Dooms in his studio (Joint Ex. 8). Safeco called five witnesses: Neil Jacot, a Safeco Claims Representative; Sergeant Nickalus White of the Fayetteville Police Department; and Defendants Ms. Rhodes, Ms. Taylor, and Ms. Pineda. Defendants did not call any additional witnesses.

The Court finds Safeco has no duty to continue to defend and no duty to indemnify Mr. Dooms in the underlying lawsuits. Below are the Court's complete findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52.[5]

---

[3] The two policies are substantively identical.

[4] At trial, Safeco maintained two objections it made to defense counsel's questions to Mr. Dooms in the designated portions of his deposition. The Court ruled on these objections on the record. Safeco's first objection was to the relevance of asking Mr. Dooms whether he was aware he was required to notify business invitees of hidden defects in his studio. The Court overruled that first objection. Safeco's second objection was to the relevance of asking Mr. Dooms if, knowing what he knows now, he would have done anything differently. The Court sustained the second objection and excluded that portion of the deposition transcript.

[5] To the extent any of the Court's findings of fact constitute conclusions of law, or mixed findings of fact/conclusions of law, the Court adopts those conclusions as if they had been restated as conclusions of law. The opposite also applies.

## I.  FINDINGS OF FACT

Having reviewed all exhibits and trial testimony, the Court makes the following findings of fact:

### Mr. Dooms's Conduct

1. Mr. Dooms is a photographer who operated a small studio in Fayetteville, Arkansas.

2. The State-Court Plaintiffs are models who, between 2019 and 2020, visited Mr. Dooms in his studio on multiple occasions to participate in photo shoots.

3. The studio was one small, rectangular room. It was arranged into three sections: an office section with a desk and computer, a middle section with couches, and a section with a backdrop for photo shoots. There were no walls or visual barriers between each section of the studio.

4. Mr. Dooms intentionally placed cameras in his photography studio. (Stipulated by the parties). The cameras in question were "spy," or hidden, cameras. There were four of these cameras in the studio. (Joint Ex. 6, p. 16). The studio also contained other handheld cameras that Mr. Dooms used for photo shoots. *See id.* at p. 15. There is no allegation that those handheld cameras were used to secretly record anyone.

5. The cameras placed by Mr. Dooms were cube-shaped (stipulated); plugged directly into a wall outlet; featured a USB plug on the front and were designed to resemble an AC adapter used for charging electronic devices; were not readily identifiable as cameras to the naked eye; and recorded video onto an SD card inserted directly into the back of the camera. *See* Joint Ex. 8. The cameras were

motion-activated. (Joint Ex. 6, p. 17). Mr. Dooms's iPhone contained an application that allowed the user to view the cameras' output directly.

6.   In the videos obtained and reviewed by the Fayetteville Police Department, the hidden cameras overlooked the office and couch sections of the studio.

7.   Mr. Dooms invited the State-Court Plaintiffs to participate in photo shoots by sending them direct messages on Instagram.

8.   Ms. Rhodes testified that she participated in four photo shoots at Mr. Dooms's studio beginning in August 2019. Ms. Rhodes changed her clothing and was fully nude inside Mr. Dooms's studio during each of these shoots. Mr. Dooms was adamant that Ms. Rhodes change her outfits and provided her additional outfits to change into. He directed her to change in the couch section of the studio. While Ms. Rhodes changed, Mr. Dooms stayed at his desk and looked straight ahead at his computer screen to ostensibly grant her privacy.

9.   During one shoot, Ms. Rhodes discovered one of Mr. Dooms's hidden cameras and inquired about it. Mr. Dooms quickly responded that the device was broken.[6]

10.  Ms. Pineda testified that she participated in one photo shoot at Mr. Dooms's studio. Ms. Pineda changed her clothing and was fully nude inside Mr. Dooms's studio during this shoot. Ms. Pineda changed in the couch section of the studio. While Ms. Pineda changed, Mr. Dooms left the studio and waited outside. Mr. Dooms informed Ms. Pineda that he would "step out, close the door, you will be by yourself and it's private."

---

[6] Mr. Dooms testified that he did not recall Ms. Rhodes finding and asking about a camera. *See* Joint Ex. 6, p. 55. The Court nevertheless credits Ms. Rhodes's testimony on these events.

11. Ms. Taylor testified that she participated in four photo shoots at Mr. Dooms's studio. Ms. Taylor changed clothing and was partially or fully nude inside the studio during three of the four shoots. Ms. Taylor changed in the couch section of the studio. During the final shoot, Mr. Dooms insisted Ms. Taylor change clothing multiple times and provided her with outfit changes. While Ms. Taylor changed, Mr. Dooms left the studio and waited outside.

12. The cameras placed by Mr. Dooms in his photography studio recorded videos of the State-Court Plaintiffs while they were changing clothes. (Stipulated). This included videos of the State-Court Plaintiffs in various states of nudity, as testified to by Sergeant White.

13. Of the hundreds of videos taken by Mr. Dooms's cameras, 18 videos featured women in various states of nudity. One of those women was a 17-year-old minor.

14. Mr. Dooms used the subject cameras to record the State-Court Plaintiffs without their consent while they changed clothes during photography shoots in 2019 and/or 2020. (Stipulated).

15. Natalie Staib, another model who participated in photo shoots at Mr. Dooms's studio, discovered the cameras and removed the SD cards from them. Ms. Staib then filed a police report and turned the SD cards over to the Fayetteville Police Department.

16. Mr. Dooms filed a police report against Ms. Staib, alleging she stole his SD cards. The Fayetteville Police Department found that Ms. Staib had taken Mr. Dooms's SD cards without permission, but the Washington County Prosecutor declined to prosecute Ms. Staib.

17. On September 16, 2020, Mr. Dooms was charged with 13 counts of video voyeurism, a Class D felony under Ark. Code Ann. § 5-16-101(a). *See* Joint Ex. 7, p. 1. Mr. Dooms pleaded guilty to all 13 counts and was sentenced on August 10, 2021, to five years in the Arkansas Department of Corrections. *See id.* at pp. 13–14.

18. Mr. Dooms intentionally placed and used the cameras for the purpose of secretly recording the State-Court Plaintiffs while nude. He did not place the cameras in his studio for any business or security purpose. The Court points to the following evidence introduced at trial to support this finding:

- Mr. Dooms specifically used cameras that were designed to record surreptitiously.

- Sergeant White testified that Mr. Dooms's cameras were exclusively used to capture women, not men, in states of undress; the cameras overlooked the couch section where the State-Court Plaintiffs changed their clothing; the application on Mr. Dooms's iPhone used to view the cameras was deleted the day after Ms. Staib filed her police report and the phone was returned to factory settings; and Mr. Dooms's laptop had been wiped when law enforcement examined it.

- State-Court Plaintiffs testified that Mr. Dooms was "adamant" and "insisted" they change clothing multiple times during shoots.

- In Ms. Rhodes's case, Mr. Dooms directed her to change in the couch area, where the hidden cameras were pointed. When Ms. Rhodes discovered one

of the cameras, Mr. Dooms falsely informed her that the camera was inoperable.[7]

- Mr. Dooms falsely informed Ms. Pineda that she would be changing in private.

- Mr. Dooms pleaded guilty to video voyeurism.[8]

- The Court does not find credible Mr. Dooms's testimony that the purpose of the cameras was to prevent theft and to protect against false accusations of sexual misconduct. *See* Joint Ex. 6, pp. 19, 24, 29. The Court also does not find credible Mr. Dooms's testimony that—while admitting he set up the cameras to record while women were changing clothes in his studio—he did not *intend* to record women while they were nude. *See id.* at p. 28. This testimony is contradicted by the evidence set out above. Moreover, it would make little sense to use *hidden* cameras to *deter* theft and false accusations of sexual misconduct.

19.  At the time of their photo shoots, the State-Court Plaintiffs were not aware there were hidden cameras recording inside Mr. Dooms's studio.

---

[7] Counsel for Ms. Rhodes argued at trial there was no evidence showing that the particular camera Ms. Rhodes found was the camera that recorded her, and therefore, Mr. Dooms may have been being truthful in saying the camera was inoperable. But even if that camera was truly inoperable, it is undisputed that Mr. Dooms did record Ms. Rhodes with one or more of his hidden cameras. Therefore, the substance of Mr. Dooms's statement was nevertheless false or, at the very least, incomplete.

[8] While Mr. Dooms's guilty plea is not conclusive of his criminal intent for collateral estoppel purposes, *see Bradley Ventures v. Farm Bureau Mut. Ins.*, 371 Ark. 229, 237 (2007), it can be considered as one piece of evidence of his intent, as conceded by Ms. Taylor's counsel at trial.

20. Mr. Dooms failed to warn the State-Court Plaintiffs of the cameras. (Stipulated). Mr. Dooms's failure to warn was intentional. The Court points to the facts listed in paragraph 18 that support Mr. Dooms's intent.

21. The studio where the State-Court Plaintiffs changed clothing was a seemingly private area out of public view. Sergeant White and the State-Court Plaintiffs testified that the studio was an enclosed one-room building, and the State-Court Plaintiffs testified they under the impression that they were in a private space while they changed clothing.

22. Mr. Dooms did not have the State-Court Plaintiffs' consent to take videos of them while they were changing clothes. (Stipulated).

### The Underlying Lawsuits

23. In October 2020, Ms. Rhodes and Ms. Pineda filed a lawsuit against Mr. Dooms in the Circuit Court of Washington County, Arkansas, case number 72CV-20-2109.

24. Ms. Rhodes and Ms. Pineda allege Mr. Dooms used concealed cameras to record them in various states of nudity while they changed clothing. They further allege they were unaware of the cameras' presence and never gave Mr. Dooms permission to record them while they changed.

25. Ms. Rhodes and Ms. Pineda's original state-court complaint (Joint Ex. 4) alleged Mr. Dooms's conduct was intentional and brought causes of action for civil action

by a crime victim, invasion of privacy by intrusion upon seclusion, outrage, and deceit.

26. In January 2022, Ms. Rhodes and Ms. Pineda filed an amended state-court complaint (Joint Ex. 5) to plead negligence in the alternative to their intentional tort claims. They allege Mr. Dooms "owed [them] a duty to use reasonable care and refrain from using cameras to record [them] in a private setting," and he "had a duty to warn [them] of the possibility [they] would be video-recorded while . . . changing clothes and, thus, in various states of nudity." (Joint Ex. 5, ¶ 94).

27. Ms. Rhodes and Ms. Pineda allege damages consisting of emotional distress, anxiety, pain and suffering, past and future lost income, medical expenses, and punitive damages. *See* Joint Ex. 5, ¶¶ 29, 36, 105–06.

28. In June 2021, Ms. Taylor also filed suit against Mr. Dooms in the Circuit Court of Washington County, Arkansas, case number 72CV-21-1226.

29. Ms. Taylor alleges that while participating in photo shoots at Mr. Dooms's studio, he asked Ms. Taylor to change outfits and left the room to ostensibly grant her privacy. Ms. Taylor further alleges Mr. Dooms recorded her with "spy cameras" while she changed outfits. Ms. Taylor alleges she did not know about the cameras and did not consent to be recorded, and Mr. Dooms never warned her about the video recording.

30. Ms. Taylor's state-court complaint (Joint Ex. 3) brings five causes of action against Mr. Dooms: negligence, civil action by crime victim, invasion of privacy by intrusion upon seclusion, outrage, and deceit. Ms. Taylor's negligence allegation

is substantially the same as the negligence allegation later added by Ms. Rhodes and Ms. Pineda.

31. Ms. Taylor alleges damages consisting of emotional distress, anxiety, pain and suffering, past and future lost income, reputational harm, medical expenses, and punitive damages. *See* Joint Ex. 3, ¶¶ 22, 55.

32. The underlying complaints do not allege that any physical injury resulted from Mr. Dooms's conduct.

## The Insurance Policies

33. In connection with a single-family dwelling located at 409 Cascade Lane, Cave Springs, AR 72718, Safeco issued to the named-insured Amber Dooms the Safeco Homeowners Policies, policy number OF2539844, with successive annual policy periods from August 31, 2018, to August 31, 2020. *See* Joint Exs. 1 & 2 (Stipulated).

34. The Policy was in effect at the time of Mr. Dooms's conduct. (Stipulated).

35. Mr. Dooms was an insured under the Policy during the time he was the spouse of Amber Dooms and a resident of the same household, a time period that covers Mr. Dooms's conduct in this case. (Stipulated).

36. The Policy contains Personal Liability Coverage. (Stipulated).

37. The Personal Liability Coverage provides coverage for bodily injuries caused by an occurrence. (Joint Ex. 1, p. 31) (Stipulated).

38. The Policy defines "bodily injury" as "bodily harm, sickness or disease, including required care, loss of services and death resulting there from." (Joint Ex. 1, p. 41) (Stipulated).

39. The Policy defines an "occurrence" as: "an accident, including exposure to conditions which results in . . . bodily injury." (Joint Ex. 1, p. 42) (Stipulated).

40. The Personal Liability Coverage contains an exclusion for any bodily injury "which is expected or intended by any insured or which is the foreseeable result of an act or omission intended by any insured." (Joint Ex. 1, p. 32) (Stipulated).

41. The Personal Liability Coverage contains an exclusion for any bodily injury "which results from violation of criminal law committed by, or with the knowledge or consent of any insured." (Joint Ex. 1, p. 32) (Stipulated).

42. An endorsement to the Policy includes Personal Offense Coverage, which provides coverage for "damages resulting from an offense defined under **_personal offense_**." (Joint Ex. 1, pp. 51) (emphasis in original) (Stipulated).

43. The Policy defines "personal offense," in relevant part, as an "invasion of privacy, which occurs in any manner." (Joint Ex. 1, pp. 53) (Stipulated).

44. The Personal Offense Coverage contains an exclusion for any invasion of privacy which is "caused by or at the direction of an insured with the knowledge that the act would violate the rights of another and would be a personal offense." (Joint Ex. 1, p. 51) (Stipulated).

45. The Personal Offense Coverage contains an exclusion for any invasion of privacy "arising out of a criminal act committed by, at the direction of, or with the cooperation of an insured knowing of the criminal nature." (Joint Ex. 1, p. 51) (Stipulated).

## II.  LEGAL STANDARD

The parties agree that Arkansas substantive law governs the interpretation and application of Safeco's Policy.

The duty to defend and the duty to indemnify "are distinct, independent obligations." *S. Farm Bureau Cas. Ins. Co. v. Watkins*, 2011 Ark. App. 388, 7 (2011). Insurers have a duty to defend an insured when claims are brought against the insured and the allegations show "a possibility that the injury or damage [may] fall within the policy coverage." *Kolbek v. Truck Ins. Exch.*, 2014 Ark. 108, 6 (2014). Because the duty to defend is based only on the allegations in the underlying pleadings, it "is broader than the duty to indemnify." *Kolbek*, 2014 Ark. at 6. "[T]he duty to defend one claim creates a duty to defend all claims," and the duty "exists regardless of the merits of the underlying claims." *Scottsdale Ins. Co. v. Universal Crop Prot. All., LLC*, 620 F.3d 926, 935 (8th Cir. 2010) (quoting *Wooddale Builders, Inc. v. Md. Cas. Co.*, 722 N.W.2d 283, 302 (Minn. 2006)).

Insurers have a duty to indemnify—to pay all claims and judgments against the insured—if the proved facts show an event occurred for which coverage applies. "Unlike an insurer's duty to defend, . . . the duty to indemnify turns on the actual facts and circumstances giving rise to liability in the underlying suit, and parties may introduce evidence during coverage litigation to establish or refute the duty to indemnify." 43 Am. Jur. 2d *Insurance* § 676 (2022) (collecting cases). Courts are permitted to rule on an insurer's duty to indemnify before the insured's liability has been established in the underlying lawsuit. *See Kolbek*, 2014 Ark. at 9–10.

"The language in an insurance policy is to be construed in its plain, ordinary, and popular sense." *McGrew v. Farm Bureau Mut. Ins. Co. of Ark.*, 371 Ark. 567, 570 (2007) (citing *Norris v. State Farm Fire & Cas. Co.*, 341 Ark. 360 (2000)). "If a provision is unambiguous, and only one reasonable interpretation is possible, [the] court will give effect to the plain language of the policy without resorting to the rules of construction. If, however, the policy language is ambiguous, and thus susceptible to more than one reasonable interpretation," the court must "construe the policy liberally in favor of the insured and strictly against the insurer." *Id.*

There are two coverage provisions at issue in this case: Personal Liability Coverage and Personal Offense Coverage. For each provision, the Court must determine whether Safeco has a duty to defend or a duty to indemnify Mr. Dooms in the underlying lawsuits.

### III. CONCLUSIONS OF LAW

1. Defendants have the burden of proving coverage under an applicable provision of the Policy. (Stipulated); *see Westfield Ins. Co. v. Robinson Outdoors, Inc.*, 700 F.3d 1172, 1174 (8th Cir. 2012) ("An insured must initially establish that a claim is covered by its insurance policy.").

2. If Defendants meet their burden of proving coverage, the burden shifts to Safeco to prove the conduct falls into an applicable exclusion in the Policy. (Stipulated); *see id.* ("After the insured has met this burden, however, the burden shifts to the insurer to prove an exclusion within the policy applies.").

3. Safeco has no duty to defend or indemnify Mr. Dooms in the underlying lawsuits for claims involving invasion of privacy, outrage, deceit, the Arkansas Civil Action by a Crime Victim Act, or punitive damages. (Stipulated).

### Personal Liability Coverage

4. Safeco has no duty to defend Mr. Dooms in the underlying lawsuits for claims of negligence under the Policy's Personal Liability Coverage.

    a. In the underlying lawsuits, the State-Court Plaintiffs allege an "accident" under the Policy's Personal Liability Coverage.

The Policy's Personal Liability Coverage only covers occurrences. The Policy defines "occurrence" as "an accident . . . which results in . . . bodily injury." (Joint Ex. 1, p. 42). The Arkansas Supreme Court has defined an accident as "an event that takes place without one's foresight or expectation." *Allstate Ins. Co. v. Martin*, 34 F. Supp. 3d 955, 957 (W.D. Ark. 2014) (citing *U.S. Fid. & Guar. Co. v. Cont'l Cas. Co.*, 353 Ark. 834, 845 (2003)).

The duty to defend is generally determined by the underlying allegations against the insured, regardless of whether "the allegations are groundless, false or fraudulent." (Joint Ex. 1, p. 31). The underlying complaints alternatively allege both intentional and negligent conduct by Mr. Dooms. *Cf. Jones v. Double "D" Properties, Inc.*, 357 Ark. 148, 157 (2004) ("[I]t is common practice to plead alternative theories and seek alternative remedies in the same lawsuit."). With regard to their negligence claims, the State-Court Plaintiffs allege in part that Mr. Dooms "breached his duty by . . . failing to either inform, post a warning, or otherwise give [them] notice that [they were] being video-recorded in a private setting while [they were] changing clothes and, thus, in various states of nudity."

14

(Joint Ex. 5, ¶ 95). In other words, the State-Court Plaintiffs contend that Mr. Dooms intentionally set up cameras to record inside his studio, but he accidentally caused their injuries by not warning them of the cameras. These allegations sufficiently allege that Mr. Dooms accidently—without foresight or expectation—failed to warn the State-Court Plaintiffs that cameras were recording in his studio.

Safeco argues "[t]he Arkansas Supreme Court has expressly rejected the argument that allegations of negligence establish an occurrence . . . and instead adopted a test where the court would look at the 'quality and purpose of the transaction as a whole' to determine a duty to defend." (Doc. 94, pp. 8–9). The Court addressed this argument more fully at the summary judgment stage. *See* Doc. 91, pp. 8–9. In short, the primary authority relied on by Safeco—*Fisher v. Travelers Indemnity Company*, 240 Ark. 273 (1966)—is distinguishable from the case at bar. Unlike in *Fisher*, the underlying complaints here allege sufficient facts to support an alternative theory of recovery based on Mr. Dooms's negligent conduct, "i.e., Mr. Dooms had a duty to warn invitees of the presence of security cameras, he breached that duty by failing to warn or post notice, and his breach caused the State-Court Plaintiffs to suffer injuries." (Doc. 91, p. 9).

Therefore, the underlying complaints allege an "accident" under the Policy. However, the Personal Liability Coverage only covers occurrences, and an accident is only an occurrence if the "accident . . . results in . . . bodily injury." (Joint Ex. 1, p. 42). The Court turns to whether the underlying complaints allege a "bodily injury" under the Policy.

  b. In the underlying lawsuits, the State-Court Plaintiffs do not allege a "bodily injury" within the meaning of the Policy's Personal Liability Coverage.

The Court must decide whether the Personal Injury Coverage requires Safeco to defend Mr. Dooms for the emotional distress, anxiety, and reputational harm alleged by the State-Court Plaintiffs. The State-Court Plaintiffs allege no physical injuries in the underlying complaints. The Personal Liability Coverage extends only to bodily injuries, which the Policy defines as "bodily harm, sickness or disease, including required care, loss of services and death resulting there from." (Joint Ex. 1, p. 41). Safeco argues "bodily harm, sickness or disease" means physical injuries only. Defendants argue the provision is ambiguous as to whether it includes non-physical injuries and must be interpreted in favor of the insured.

The plain meaning of "bodily harm" is physical harm to a person's body. Black's Law Dictionary defines "bodily harm" as "[p]hysical pain, illness, or impairment of the body." *Harm*, Black's Law Dictionary (11th ed. 2019). This is distinguished from emotional harm (or emotional distress), which is defined as a "highly unpleasant mental reaction (such as anguish, grief, fright, humiliation, or fury) that results from another person's conduct; emotional pain and suffering." *Harm*; *Distress*, Black's Law Dictionary (11th ed. 2019). And because "bodily harm, sickness or disease" defines the term "*bodily* injury," the plainest reading is that "bodily" modifies harm, sickness, and disease. In other words, only harm, sickness, and disease of a physical nature—rather than mental—are included in the definition. This reading makes sense in context of the Policy as a whole. Safeco offers its Personal Offense endorsement to *extend* coverage to certain non-physical injuries because the Personal Liability Coverage only covers bodily injuries.

In *Heacker v. Safeco Insurance Company of America*, 676 F.3d 724 (8th Cir. 2012), the Eighth Circuit analyzed the same Safeco policy language as the instant case.

16

The Eighth Circuit held that, under Kansas law, "the word 'bodily' in the bodily injury definition modifies injury, sickness, and disease," and "physical symptoms of distress, PTSD, and alcoholism" do not meet this definition. *Heacker*, 676 F.3d 724, 728 (8th Cir. 2012). "[T]he overwhelming majority of jurisdictions which have considered the issue hold that 'bodily injury' standing alone or defined in a policy as 'bodily injury [or harm], sickness or disease' is unambiguous and encompasses only physical harm." *Citizens Ins. Co. of Am. v. Leiendecker*, 962 S.W.2d 446, 452 (Mo. Ct. App. 1998) (collecting cases) (alteration in original); *see also Era Franchise Sys., Inc. v. N. Ins. Co. of N.Y.*, 208 F.3d 225 (10th Cir. 2000) (finding same). While no court in Arkansas has addressed this precise question, the Arkansas Supreme Court has found "the words 'bodily injury' are commonly and ordinarily used to designate an injury caused by external violence." *Duvall v. Mass. Indem. & Life Ins. Co.*, 295 Ark. 412, 416 (1988) (citing 43 Am. Jur. 2d *Insurance* § 563 (1982)).

"When a state's highest court has not decided an issue," the Court must "predict how the state's highest court would resolve that issue." *Cont'l Cas. Co. v. Advance Terrazzo & Tile Co.*, 462 F.3d 1002, 1007 (8th Cir. 2006). The Court concludes the Arkansas Supreme Court would agree with the vast majority of jurisdictions and find "bodily harm, sickness or disease" is unambiguous and does not include non-physical injuries. Consequently, the harm suffered by the State-Court Plaintiffs falls outside the Personal Liability Coverage, and Safeco has no duty to defend Mr. Dooms under this provision of the Policy.[9]

---

[9] As further explained below in Conclusion of Law number 8, even if Safeco did have a duty to defend Mr. Dooms under the Personal Liability Coverage, that duty would have extended only through the date of the filing of this Court's Judgment because the

17

The Court now turns to whether Safeco has a duty to indemnify Mr. Dooms under the Personal Liability Coverage. Unlike the duty to defend, the duty to indemnify is based on the actual facts proved at trial.

5. Safeco has no duty to indemnify Mr. Dooms in the underlying lawsuits for claims of negligence under the Policy's Personal Liability Coverage.

    a. Because Safeco has no duty to defend Mr. Dooms under the Policy's Personal Liability Coverage, Safeco also has no duty to indemnify Mr. Dooms under that provision. *See Kolbek*, 2014 Ark. at 6.

    b. Even if Safeco had a duty to defend Mr. Dooms under the Personal Liability Coverage, the evidence shows Mr. Dooms intended to secretly record the State-Court Plaintiffs, and, therefore, no "accident" occurred under the Policy for purposes of the duty to indemnify.

    c. Even if an "accident" occurred under the Policy, the State-Court Plaintiffs' injuries were expected or intended by Mr. Dooms or were the foreseeable result of an act or omission intended by him for purposes of the duty to indemnify.

The Policy excludes Personal Liability Coverage for any bodily injury "which is expected or intended by any insured or which is the foreseeable result of an act or omission intended by any insured." (Joint Ex. 1, p. 32). Once it is established the insured intended an act or omission, "[t]he test is what a plain ordinary person would expect and

---

Judgment will extinguish the possibility that any damages against Mr. Dooms in the underlying suits would be for covered conduct.

intend to result from" that intended act or omission. *CNA Ins. Co. v. McGinnis*, 282 Ark. 90, 93 (1984).[10]

Mr. Dooms intended to record the State-Court Plaintiffs while nude without the women's knowledge or consent. To the extent their injuries amount to their privacy being invaded by being secretly filmed and potentially viewed while nude, those injuries were intended by Mr. Dooms.

Any other injuries that stem from Mr. Dooms's actions but were not expressly intended by him—such as the State-Court Plaintiffs' anxiety, lost wages, and medical expenses—are the expected result of Mr. Dooms's actions. A "plain ordinary person" would expect that secretly recording another person while nude in an ostensibly private setting would cause the victim mental distress, anxiety, and any expenses associated with those conditions. Likewise, those injuries are the foreseeable result of Mr. Dooms's actions.

      d.  The State-Court Plaintiffs' injuries resulted from a violation of criminal law committed by Mr. Dooms, further excluding any Personal Liability Coverage for purposes of the duty to indemnify.

---

[10] Defendants urge the Court to ignore the *McGinnis* test and instead rely on an earlier case from the Arkansas Supreme Court, *Talley v. MFA Mutual Insurance Company*, 273 Ark. 269, 271 (1981). In *Talley*, an insured teenager fired a gun that injured two other teenagers. The boy intentionally fired the gun, but there remained a dispute about whether he intentionally or negligently shot the other boys. The court found that, under the insurance policy's expected or intended acts exclusion, if the boy "intended to shoot [the other boys], then there is no coverage. If he did not and it was mere negligence on his part, as he contends, then there is coverage." *Id.* at 274. Here, because the Court has already found that Mr. Dooms intentionally recorded the State-Court Plaintiffs while nude, *Talley* is inapposite. Moreover, unlike the instant Policy, the exclusion in *Talley* did not exclude coverage for injuries that were the "foreseeable result of an act or omission intended by any insured."

The Personal Liability Coverage does not apply to bodily injury "which results from violation of criminal law committed by, or with the knowledge or consent of any insured." (Joint Ex. 1, p. 32). Mr. Dooms was charged and convicted of video voyeurism, a Class D felony, which has the following elements:

> (a) It is unlawful to use any camera, videotape, photo-optical, photoelectric, or any other image recording device for the purpose of secretly observing, viewing, photographing, filming, or videotaping a person present in a residence, place of business, school, or other structure, or any room or particular location within that structure, if that person:
>
> > (1) Is in a private area out of public view;
> >
> > (2) Has a reasonable expectation of privacy; and
> >
> > (3) Has not consented to the observation.

Ark. Code Ann. § 5-16-101(a). An exception to liability exists for "[s]ecurity monitoring operated by or at the direction of the owner or administrator of a place of business, school, or other structure." *Id.* § 5-16-101(d)(3).

Mr. Dooms's guilty plea does not establish his guilt for purposes of a criminal act exclusion. *See Bradley Ventures*, 371 Ark. at 237. Nevertheless, the Court may find an insured has committed a crime if the evidence establishes each element. *See Allstate Ins. Co. v. Burrough*, 120 F.3d 834, 837 (8th Cir. 1997) (affirming the district court's finding "that, although the state of Arkansas never pressed criminal charges . . . , Burrough committed a criminal act under Arkansas law," thereby excluding coverage under the policy's criminal acts exclusion). "The well settled rule in this country in civil cases is that facts constituting a crime need not be proven beyond a reasonable doubt and only a preponderance of evidence is required to sustain" a criminal allegation that would deny coverage under an "insurance policy." *Orient Ins. Co. v. Cox*, 218 Ark. 804, 815 (1951);

*see also Metro. Prop. & Cas. Ins. Co. v. Calvin*, 2013 WL 12156441, at *2 (E.D. Ark. Oct. 3, 2013).

Safeco has met its burden to show by a preponderance of the evidence that Mr. Dooms committed the crime of video voyeurism under § 5-16-101(a). It is undisputed that Mr. Dooms used a camera to record the State-Court Plaintiffs without their consent or knowledge. The Court found above that Mr. Dooms took these actions with the purpose of secretly recording the State-Court Plaintiffs while they were nude and had no security-monitoring purpose in recording the women. The Court further found above that the studio was a private area out of public view.

That leaves only the question of whether the State-Court Plaintiffs had a reasonable expectation of privacy while they changed clothing in the studio. In *Devries v. State*, the Arkansas Court of Appeals held that "reasonable expectation of privacy" under the video voyeurism statute is not a Fourth Amendment standard. *See* 2019 Ark. App. 478, 6 (2019). There the court found that, "under the facts of this case," the jury had sufficient evidence before it to conclude the victims had a reasonable expectation of privacy when the victims were in "private areas of their home, and the jury was presented with evidence that they had not consented to [the defendant's] actions." *Id.* at 6.

Here, the State-Court Plaintiffs did not consent to Mr. Dooms's secret recordings and were intentionally given a false expectation they were in a private area while they changed clothing. Mr. Dooms either left the room or turned his back while they changed and affirmatively told Ms. Pineda she would be changing in private. The Court finds the State-Court Plaintiffs had a reasonable expectation of privacy while they changed clothing inside Mr. Dooms's studio.

Each element being satisfied, the Court finds by a preponderance of the evidence that Mr. Dooms committed the crime of video voyeurism when he used hidden cameras to secretly record the State-Court Plaintiffs in various states of undress inside his photography studio. Therefore, the injuries alleged in the underlying lawsuits resulted from a violation of criminal law committed by Mr. Dooms, and Safeco has no duty to indemnify Mr. Dooms under the Policy's Personal Liability Coverage for any damages awarded to the State-Court Plaintiffs for those injuries.

**Personal Offense Coverage**

6.  Safeco had a duty to defend Mr. Dooms in the underlying lawsuits until the date of this Court's Judgment because the allegations of invasions of privacy against him fell within the Personal Offense Coverage and no exclusion applied on the face of the underlying complaints.

The Policy's Personal Offense Coverage extends to injuries resulting from an "invasion of privacy, which occurs *in any manner*." (Joint Ex. 1, p. 53) (emphasis added). The underlying complaints allege Mr. Dooms both intentionally and negligently invaded the State-Court Plaintiffs' privacy by recording them while they changed clothing inside Mr. Dooms's studio. Safeco conceded during closing arguments that Defendants have met their burden to show the Personal Offense Coverage facially applies to the State-Court Plaintiffs' allegations, and Safeco would have a duty to defend Mr. Dooms unless an exclusion applies.

Safeco has not met its burden to show an exclusion precluded its duty to defend Mr. Dooms under the Policy's Personal Offense Coverage. Coverage is excluded for

personal offenses caused by an insured who knowingly violates another person's rights and for personal offenses arising out of an insured's criminal acts.

The underlying complaints allege Mr. Dooms intentionally caused the invasions of privacy suffered by the State-Court Plaintiffs. The underlying complaints also allege Mr. Dooms committed the crime of video voyeurism. However, the State-Court Plaintiffs alternatively plead Mr. Dooms's actions were merely negligent—he failed to post a warning in his studio that cameras were recording anyone inside. "[W]here a complaint states a claim for relief alleging differing facts or theories of recovery and at least one, but not all, of the alleged theories would be covered by the policy if proved, the insurer has a duty to defend its insured." *U. S. Fid. & Guar. Co. v. Louis A. Roser Co.*, 585 F.2d 932, 936 (8th Cir. 1978).

The underlying complaints were broad enough to create the "possibility" that the State-Court Plaintiffs' injuries "f[e]ll within the policy coverage." *Kolbek*, 2014 Ark. at 6. Therefore, Safeco *did* have a duty to defend Mr. Dooms in the underlying lawsuits—as it has done thus far under a reservation of rights—from the inception of those lawsuits until the date this Court files its Judgment in this case.

7. Safeco has no duty to indemnify Mr. Dooms in the underlying lawsuits for claims of negligence under the Policy's Personal Offense Coverage.

    a. Safeco's duty to indemnify under the Personal Offense Coverage is excluded because the invasions of privacy suffered by the State-Court Plaintiffs arose out of criminal acts committed by Mr. Dooms knowing of the criminal nature of those acts.

The Personal Offense Coverage excludes coverage for any invasion of privacy "arising out of a criminal act committed by, at the direction of, or with the cooperation of an insured knowing of the criminal nature." (Joint Ex. 1, p. 51). The Court found above that Safeco has met its burden to show Mr. Dooms committed video voyeurism, and the State-Court Plaintiffs' injuries arise from Mr. Dooms's criminal acts. But the instant exclusion adds an additional requirement: that the insured commit the crime "knowing of the criminal nature." The parties agree that this final clause of the exclusion modifies the entire preceding list, including the "committed by" language: an insured who commits a crime must do so knowing of the criminal nature for the exclusion to apply. The parties diverge, however, in whether this is a subjective or objective test.

Safeco argues the Court should look at what a reasonable insured would know under the circumstances. Defendants argue Safeco must prove Mr. Dooms subjectively knew his actions would be criminal.

The Court finds Safeco has met its burden under either test. Certainly, a reasonable insured would know that secretly recording women while nude would be a criminal act when done intentionally. Similarly, the evidence shows Mr. Dooms led the State-Court Plaintiffs to believe they were in a private setting. He encouraged and even insisted they change clothes in the couch area of his studio. And all the while he was capturing nude videos of these women with hidden cameras that he had the ability to remotely access from his iPhone, the contents of which he deleted before law enforcement could access it. The totality of the circumstances show Mr. Dooms knew his actions were criminal in nature. Therefore, Safeco's duty to indemnify Mr. Dooms under the Policy's Personal Offense Coverage is excluded because the State-Court Plaintiffs'

injuries arise from criminal acts committed by Mr. Dooms knowing of the criminal nature of his actions.

   b. Safeco's duty to indemnify under the Personal Offense Coverage is further excluded because the invasions of privacy suffered by the State-Court Plaintiffs were caused by Mr. Dooms with the knowledge that his actions would violate the rights of the State-Court Plaintiffs and would be an invasion of privacy.

  The Personal Offense Coverage excludes coverage for any invasion of privacy which is "caused by or at the direction of an insured with the knowledge that the act would violate the rights of another and would be a personal offense." (Joint Ex. 1, p. 51). Mr. Dooms knew the State-Court Plaintiffs thought they were changing clothes in private. He intended for them to believe as much. He therefore knew that, by secretly recording them, he would invade their privacy and violate their rights.

  This exclusion is also satisfied under an objective standard: a reasonable person would know that secretly recording another person changing clothes after leading that person to believe they were in private would be an invasion of privacy.

  Safeco has met its burden to show the invasions of privacy suffered by the State-Court Plaintiffs were caused by Mr. Dooms with the knowledge that his actions would violate the State-Court Plaintiffs' rights and would be an invasion of privacy. Safeco consequently has no duty to indemnify Mr. Dooms in either underlying lawsuit.

  8. Unless appealed, the Court's Judgment in this case will be a final judgment that extinguishes any possibility of coverage under the Policy, and Safeco's duty to defend will cease.

Arkansas recognizes "the general rule that the allegations in the pleadings against the insured determine the insurer's duty to defend." *Murphy Oil USA, Inc. v. Unigard Sec. Ins. Co.*, 347 Ark. 167, 175–76 (2001). However, "where there is no possibility that the damage alleged in the complaint may fall within the policy coverage, there would be no duty to defend." *Id.* at 176. While there *was* a possibility of Personal Offense Coverage based on the negligence claims in the underlying pleadings, the facts adduced at trial show that any judgment against Mr. Dooms will be for intentional, criminal conduct that is excluded under the Policy. Consequently, Safeco has no duty to defend Mr. Dooms under the Personal Offense Coverage after judgment is entered in this case.

An insurer's duty to defend is "not an interminable one, and will end if and when it is shown unequivocally that the damages alleged would not be covered by the policy." *Sturges Mfg. Co. v. Utica Mut. Ins. Co.*, 37 N.Y.2d 69, 74 (1975). Judge Learned Hand explained that "[i]n most cases . . . it will not be difficult for the insurer to compel the injured party to disclose whether the injury is within the policy; and, if it transpires that it is not, the insurer need go on no longer." *Lee v. Aetna Cas. & Sur. Co.*, 178 F.2d 750, 752 (2d Cir. 1949).

The Minnesota Supreme Court has held that an insurer may withdraw from a defense once "its duty to defend all arguably covered claims has been completely extinguished—in other words, when no further rights to appeal those arguably covered claims exist." *Meadowbrook, Inc. v. Tower Ins. Co.*, 559 N.W.2d 411, 417 (Minn. 1997).[11] The Hawaii Supreme Court has similarly held that "[t]he duty to defend continues until the

---

[11] The Court notes that Arkansas and Minnesota follow the same governing principles for the duty to defend analysis. *Compare Murphy Oil USA, Inc.*, 347 Ark. at 175–76; *with Franklin v. W. Nat. Mut. Ins. Co.*, 574 N.W.2d 405, 406–07 (Minn. 1998).

potential for liability is finally resolved," either through a certified appeal of an order dismissing a particular claim "or a final judgment had dispose[s] of the entire case." *Com. & Indus. Ins. Co. v. Bank of Hawaii*, 73 Haw. 322, 329 (1992). Other jurisdictions have adopted similar rules. *See*, *e.g.*, *Lockwood Int'l, B.V. v. Volm Bag Co., Inc.*, 273 F.3d 741, 744 (7th Cir. 2001) (holding that "if in the course of litigation the covered claims fall out of the case through settlement or otherwise, the insurer's duty to defend his insured ceases"); *Conway Chevrolet Buick, Inc. v. Travelers Indem. Co.*, 136 F.3d 210, 214 (1st Cir. 1998) (finding that an insurer may withdraw from a defense after "[t][he court's grant of partial summary judgment . . . left no basis for coverage").

In this federal declaratory judgment action, the Court cannot dismiss any cause of action brought against Mr. Dooms in the underlying state-court lawsuits—the negligence claims against him there will remain, for the time being. However, the Court explained above why—on the merits—both exclusions to the Personal Offense Coverage apply to excuse any coverage responsibility by Safeco. Accordingly, this Court's Judgment will be a final judgment finding that any damages found against Mr. Dooms in the underlying lawsuits will be for intentional, criminal conduct that is excluded under the Policy. No "injury or damage within the policy coverage could result" from the underlying lawsuits, *Home Indem. Co. v. City of Marianna*, 291 Ark. 610, 618 (1987), and Safeco has no duty to continue defending Mr. Dooms in those lawsuits.

## IV. CONCLUSION

For the reasons stated above, the Court **DECLARES** that Safeco has no duty to continue to defend and no duty to indemnify Mr. Dooms in the two lawsuits filed against

him by Ms. Rhodes, Ms. Pineda, and Ms. Taylor in the Circuit Court of Washington County, Arkansas.

Judgment will enter contemporaneously with this opinion.

**IT IS SO ORDERED** on this 29th day of July, 2022.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE